**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SHANNON O'NEILL, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR** |
| | ) | **VIOLATIONS OF THE** |
| ISOPLEXIS CORPORATION, SEAN | ) | **FEDERAL SECURITIES LAWS** |
| MACKAY, JOHN G. CONLEY, JAMES R. | ) | |
| HEATH, GREGORY P. HO, JASON MYERS, | ) | **JURY TRIAL DEMANDED** |
| NACHUM SHAMIR, DANIEL WAGNER, and | ) | |
| ADAM WIESCHHAUS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Shannon O'Neill ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

## NATURE OF THE ACTION

1.      Plaintiff brings this action against IsoPlexis Corporation ("IsoPlexis" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed merger of the Company with Berkeley Lights, Inc. ("Berkeley Lights").[1]

2.      On December 21, 2022, the Company entered into an Agreement and Plan of

---

[1] The proposed business combination described herein is referred to as the "Proposed Transaction."

Merger with Berkeley Lights and Berkeley Lights' wholly owned subsidiary, Iceland Merger

Sub Inc. ("Merger Sub").  The Merger Agreement provides that IsoPlexis stockholders will

receive 0.6120 of a share of Berkeley Lights common stock per share of IsoPlexis common

stock.[2]

3.      The Company's corporate directors subsequently authorized the February 13,

2023, filing of the materially incomplete and misleading Schedule 14A Definitive Proxy

Statement (the "Proxy Statement") with the SEC.[3]  The Proxy Statement, which recommends

that Company stockholders vote in favor of the Share Issuance and the Proposed Transaction,

omits or misrepresents material information necessary and essential to that decision.

Defendants authorized the issuance of the false and misleading Proxy Statement in violation

of Sections 14(a) and 20(a) of the Exchange Act.

4.      It is imperative that the material information omitted from the Proxy Statement

is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that

they can properly exercise their corporate suffrage rights, among other things.[4]

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin

Defendants from taking any steps to consummate the Share Issuance and  Proposed Transaction

---

[2] Upon completion of the Proposed Transaction, IsoPlexis stockholders will own approximately 24.8% and Berkeley Lights stockholders will own approximately 75.2% of the outstanding shares of the combined company.

[3] The Merger Agreement, as amended, requires ISOPLEXIS to issue additional shares of its common stock (the "Share Issuance").  As a Nasdaq listed company, ISOPLEXIS must thus secure stockholder approval before issuing 20% or more of its outstanding common stock and before issuing securities that will result in a "change of control" of the company.  Accordingly, the Proposed Transaction is contingent upon ISOPLEXIS stockholders voting to approve the proposed Share Issuance.

[4] The Special Meeting at which stockholders are asked to approve the Share Issuance and Proposed Transaction currently is scheduled for March 16, 2023.

unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.      Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9.      Plaintiff is, and has been at all times relevant hereto, the owner of IsoPlexis common stock.

10.      Defendant IsoPlexis is a Delaware corporation with its principal executive offices located at 35 NE Industrial Road, Branford, Connecticut 06405.  The Company's shares trade on the Nasdaq Global Select Market under the ticker symbol "ISO."  IsoPlexis is a life sciences company empowering labs to leverage the cells and proteome changing the course of human health.  IsoPlexis' platforms provide insights into how multi-functional immune cells communicate and respond, assisting researchers in understanding and predicting disease

progression, treatment resistance and therapeutic efficacy.  The Company's platform is an end-to-end solution comprised of the Company's proprietary IsoLight and IsoSpark instruments, IsoCode and CodePlex chip consumables, and IsoSpeak software.  The IsoLight and IsoSpark instruments are designed to be fully automated benchtop proteomic hubs.  The IsoCode chips utilize the Company's core technology leveraging its proteomic barcoding to capture single cell protein information.  The CodePlex chips leverage the Company's core technology to assay multiplexed bulk proteins from very low volumes.  The IsoSpeak software interprets this data and is capable of rapidly returning comprehensive data figures in a format that would be suitable for inclusion in a research publication submission and is also capable of producing advanced visualizations to reveal key insights.

11.     Defendant Sean Mackay ("Mackay") co-founded the Company and is and has been Chief Executive Officer and a director of the Company at all times relevant hereto.

12.     Defendant John G. Conley is and has been Chairman of the Board and a director of the Company at all times relevant hereto.

13.     Defendant James R. Heath is and has been a director of the Company at all times relevant hereto.

14.     Defendant Gregory P. Ho is and has been a director of the Company at all times relevant hereto.

15.     Defendant Jason Myers is and has been a director of the Company at all times relevant hereto.

16.     Defendant Nachum Shamir is and has been a director of the Company at all times relevant hereto.

17.     Defendant Daniel Wagner is and has been a director of the Company at all times relevant hereto.

18.     Defendant Adam Wieschhaus is and has been a director of the Company at all times relevant hereto.

19.     Defendants identified in paragraphs 11-18 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### The Proposed Transaction

20.     On December 21, 2022, IsoPlexis and Berkeley Lights jointly announced in relevant part:

> EMERYVILLE, CA and BRANFORD, Conn., Dec. 21, 2022 (GLOBE NEWSWIRE) -- Berkeley Lights (Nasdaq: BLI), a life sciences tools company, and IsoPlexis (Nasdaq: ISO), a company empowering labs to leverage the cells and proteome changing the course of human health, today announced a definitive agreement under which Berkeley Lights will acquire IsoPlexis in an all-stock transaction valued at $57.8 million.
>
> The combined company, which will be named PhenomeX (Nasdaq: CELL), will be a premier functional cell biology company that provides live cell biology research tools which deliver deep insights into cellular function and new perspectives on phenomes. Under the terms of the agreement, which was unanimously approved by the Boards of Directors of both companies, IsoPlexis shareholders will receive 0.612 shares of Berkeley Lights stock for each IsoPlexis share they hold. Following the close of the transaction, Berkeley Lights shareholders will own approximately 75.2 percent of the combined company, and IsoPlexis shareholders will own approximately 24.8 percent of the combined company.
>
> "The combination of Berkeley Lights and IsoPlexis represents an important milestone and fuels our transformation into a growing, profitable, and sustainable life sciences company," said Siddhartha Kadia, Ph.D., chief executive officer of Berkeley Lights. "This transaction accelerates our progress across every core pillar of our strategic plan and creates a path to achieving positive operating cash flow earlier than we expected to as a standalone company. We look forward to joining forces with the IsoPlexis team as we

embark on this next chapter and create value for our shareholders, employees, and customers."

Sean Mackay, co-founder and chief executive officer of IsoPlexis, said, "This transaction brings together two companies whose innovative solutions will help establish a technology leader in functional cell biology. The combined company will have a world-class team with complementary cultures and competencies to drive outcomes for customers and shareholders. We look forward to working together with the wonderful team at Berkeley Lights."

**Compelling Strategic and Financial Benefits**

As the combination of Berkeley Lights and IsoPlexis, PhenomeX's mission is to empower researchers to leverage the full potential of functional cell biology and shape the next wave of scientific revolution.

This transaction fully supports the five pillars of Berkeley Lights' strategic plan by:

- **Building a world-class team with a proven track record in profitably scaling life sciences tools and services companies.** The combined company will be led by Berkeley Lights' experienced Board of Directors and a proven management team that leverages the talent within both organizations. Berkeley Lights' management team is highly experienced in company integration and consolidating organizations.
  - o Siddhartha Kadia will serve as CEO and a member of the combined company's Board of Directors; and
- Sean Mackay is expected to be appointed chief product officer of the combined company and will add significant expertise to an already strong leadership team at Berkeley Lights.

- **Prioritizing R&D return on investment through increased focus and rigor on development initiatives**. The combined company will unite complementary portfolios that will extend its leadership through the functional cell biology continuum with highly differentiated technology. It will accelerate innovation by:
  - o Focusing resources on the highest-return initiatives;
  - o Using the lower-cost IsoPlexis platform to offer enhanced functionality from Berkeley Lights' technology portfolio; and
  - o Sustaining its competitive advantage through an intellectual property estate of more than 600 issued patents.

- **Delivering consistent commercial execution through a new sales structure, enhanced product portfolio and pricing strategy**. The

combination will strengthen commercial execution with an enhanced geographical footprint.  This will be done through:

- o Diversifying the customer base, uniting Berkeley Lights' position in the biopharma segment and IsoPlexis' foothold in the academic segment;
- o Expanding its product portfolio offering with increased accessibility to meet customers' workflow needs;
- o Strengthening its global reach with a 75% increase in the size of Berkeley Lights' sales organization; and
- o Enhancing the focus on recurring revenue.

- **Creating a platform for further consolidation in high-growth functional cell biology tools by**:
  - o Participating in a larger cell biology market with a wide range of tools and services through cross-selling opportunities to existing and new customers;
  - o Enabling significant productivity through combined R&D, G&A and supply chain / manufacturing infrastructure; and
  - o Evaluating M&A opportunities that will further accelerate profitable growth and leverage a combined cost structure.

- **Generating positive operating cash flow by 2024.**  The combined company anticipates delivering cost synergies of approximately $70 million annualized by 2024, which will increase profitability and accelerate the timeline to breakeven.  The new company is expected to generate positive operating cash flow at $150 million in revenue by 2024, which is earlier than Berkeley Lights was expected to achieve positive operating cash flow as a standalone company.

**Timing and Approvals**

The transaction is expected to close in the first quarter of 2023, subject to approval by shareholders of both Berkeley Lights and IsoPlexis and other customary closing conditions.

Existing shareholders of IsoPlexis representing approximately 68% of the outstanding IsoPlexis shares have agreed to vote their shares in support of the transaction.  Dr. Igor Khandros, co-founder of Berkeley Lights, and entities related to him have also agreed to vote their shares representing approximately 13% of the outstanding Berkeley Lights shares in favor of the transaction.

**Advisors**

Cowen is acting as financial advisor to Berkeley Lights, and Freshfields Bruckhaus Deringer LLP is serving as legal counsel.  For IsoPlexis, Evercore is

serving as financial advisor, and Cravath, Swaine & Moore LLP is serving as legal counsel.

**The Materially Incomplete and Misleading Proxy Statement**

21.     The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on February 13, 2023  The Proxy Statement, which recommends that IsoPlexis stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the financial forecasts for IsoPlexis and the financial analyses that support the fairness opinion provided by the Company's financial advisor Evercore Group L.L.C. ("Evercore"); and (b) potential conflicts affecting Company insiders.

*Material Misrepresentations and/or Omissions Concerning the Company's Financial Forecasts and  Evercore's Financial Analysis*

22.     The Proxy Statement fails to disclose material information concerning the financial forecasts for the Company, including estimates of: (a) certain cost synergies expected to result from the Proposed Transaction ("Synergies"); (b) the amount and terms of the financing required to fund IsoPlexis' operations ("Financing Estimates"); (c) the cost of stock-based compensation of IsoPlexis and Berkeley Lights ("SBC Estimates"); and (d) the amount, timing and use of certain tax attributes of IsoPlexis and Berkeley Lights ("Tax Attributes Estimates"), each as prepared by Company management and provided to and relied upon by Evercore for its financial analyses.[5]

---

[5] The Proxy Statement sets forth that in connection with rendering its fairness opinion, Evercore:

- reviewed certain internal projected financial data relating to IsoPlexis and furnished to Evercore by the management of IsoPlexis and certain projected financial data relating to Berkeley Lights prepared and furnished to Evercore by management of IsoPlexis, each as approved for Evercore's use by

23.     The Proxy Statement further fails to disclose the line items underlying forecasted EBITDA and Unlevered Free Cash Flow for IsoPlexis management's respective projections for the Company and Berkeley Lights.

24.     The Proxy Statement fails to disclose material information concerning Evercore's financial analyses.

25.     With respect to the *Discounted Cash Flow Analysis of IsoPlexis* performed by Evercore, the Proxy Statement fails to disclose: (a) the Company's terminal year estimate of unlevered, after-tax free cash flows, used to calculate the IsoPlexis' terminal values; (b) the Company's terminal values; (c) the impact of future equity raise based on the Financing Estimates; (d) the cost of stock based compensation of IsoPlexis based on the SBC Estimates; (e) the impact of certain tax attributes of IsoPlexis based on the Tax Attributes Estimates; (f) IsoPlexis' net debt as of December 31, 2022; and (g) the number of fully diluted outstanding shares of Company common stock as of December 16, 2022 (including the impact of future equity raise based on the Financing Estimates).

---

IsoPlexis (the "IsoPlexis forecasts," as defined and summarized in the section entitled "—IsoPlexis Unaudited Financial Projections"), including certain cost synergies prepared by the management of IsoPlexis expected to result from the merger (referred to in this section as the "Synergies"), estimates prepared by the management of IsoPlexis regarding the amount and terms of the financing required to fund IsoPlexis' operations (referred to in this section as the "Financing Estimates"), estimates prepared by the management of IsoPlexis regarding the cost of stock based compensation of IsoPlexis and Berkeley Lights (referred to in this section as the "SBC Estimates"), and estimates prepared by the management of IsoPlexis regarding the amount, timing and use of certain tax attributes of IsoPlexis and Berkeley Lights (referred to in this section as the "Tax Attributes Estimates"), each as approved for Evercore's use by IsoPlexis[.]

*Id*. at 91.

26.     With respect to the *Discounted Cash Flow Analysis of Berkeley Lights –
Standalone* performed by Evercore, the Proxy Statement fails to disclose: (a) Berkeley Lights'
terminal year estimate of unlevered, after-tax free cash flows, used to calculate Berkeley Lights'
terminal values; (b) Berkeley Lights' terminal values; (c) the cost of stock based compensation
of Berkeley Lights based on the SBC Estimates; (d) the impact of certain tax attributes of
Berkeley Lights based on the Tax Attributes Estimates; € Berkeley Lights' net debt as of
December 31, 2022; and (f) the number of fully diluted outstanding shares of Berkeley Lights
common stock as of December 16, 2022.

27.     With respect to the *Discounted Cash Flow Analysis of Berkeley Lights – Pro
Forma* performed by Evercore, the Proxy Statement also fails to disclose: (a) the terminal year
estimate of unlevered, after-tax free cash flows of Berkeley Lights on a pro forma basis, used
to calculate the pro forma company's terminal values; (b) the pro forma company's terminal
values; (c) the cost of stock based compensation of Berkeley Lights on a pro forma basis based
on the SBC Estimates; (d) the impact of certain tax attributes of Berkeley Lights on a pro forma
basis based on the Tax Attributes Estimates; (e) the net debt of Berkeley Lights on a pro forma
basis as of December 31, 2022; and (f) the number of fully diluted outstanding shares of
Berkeley Lights common stock on a pro forma basis as of December 16, 2022.

28.     With respect to the *Present Value of Future Share Price Analysis – IsoPlexis*
performed by Evercore, the Proxy Statement fails to disclose: (a) IsoPlexis' net debt as of
December 31, 2027; and (b) the number of fully diluted outstanding shares of IsoPlexis
common stock as of December 31, 2027 (including the impact of future equity raise based on
the Financing Estimates).

29.     With respect to the *Present Value of Future Share Price Analysis – Berkeley Lights* performed by Evercore, the Proxy Statement fails to disclose: (a) Berkeley Lights' net debt as of December 31, 2027; and (b) the number of fully diluted outstanding shares of Berkeley Lights common stock as of December 31, 2027.

30.     With respect to the *Selected Publicly Traded Companies Analysis* and *Precedent Transactions Analysis* performed by Evercore, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies and transactions analyzed, respectively.

***Material Misrepresentations and/or Omissions Concerning Company Insiders' Potential Conflicts of Interest***

31.     The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Company insiders, including the details of all employment and retention-related discussions and negotiations that occurred between Berkeley Lights and IsoPlexis directors and officers, including when they occurred and their content.

32.     The Proxy Statement further fails to disclose whether any of Berkeley Lights' proposals or indications of interest mentioned management retention or board membership with the combined company.

33.     The omission of the above-referenced information renders statements in the "IsoPlexis Unaudited Financial Projections," "Opinion of IsoPlexis' Financial Advisor," "Background of the Merger" and "Interests of Isoplexis' Directors and Executive Officers in the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

34.     Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and ISOPLEXIS**

35.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

36.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9.  IsoPlexis is liable as the issuer of these statements.

37.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

38.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

39.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate

disclosure as significantly altering the total mix of information made available in the Proxy

Statement and in other information reasonably available to stockholders.

40.     The Proxy Statement is an essential link in causing Plaintiff and the Company's

stockholders to approve the Proposed Transaction.

41.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange

Act and Rule 14a-9 promulgated thereunder.

42.     Because of the false and misleading statements in the Proxy Statement, Plaintiff

is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

43.     Plaintiff repeats and realleges the preceding allegations as if fully set forth

herein.

44.     The Individual Defendants acted as controlling persons of IsoPlexis within the

meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

officers and/or directors of IsoPlexis and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the false statements contained in the Proxy Statement,

they had the power to influence and control and did influence and control, directly or indirectly,

the decision making of the Company, including the content and dissemination of the various

statements that Plaintiff contends are false and misleading.

45.     Each of the Individual Defendants was provided with or had unlimited access to

copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after

13

these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

46.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

47.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

48.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of the Company, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and

disseminate the material information identified above to Company stockholders;

        B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

        C.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

        D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

        E.      Granting such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  February 22, 2023

                               **LONG LAW, LLC**

                        By:  */s/ Brian D. Long*

                               Brian D. Long (#4347)
                               3828 Kennett Pike, Suite 208
                               Wilmington, DE 19807
                               Telephone: (302) 729-9100
                               Email: BDLong@LongLawDE.com

                               *Attorneys for Plaintiff*

15